Jason B. Lattimore
JASON B. LATTIMORE, ESQ. LLC
89 Headquarters Plaza #1260
Morristown, NJ 07960
Phone: (973) 998-7477
Fax: (973) 264-1159
Jason@LattimoreLaw.com
*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RANPHYS DARIO ORTIZ DE LEON, and RR ENTERTAINMENT MUSIC CORP.,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT DARIO ORTIZ LOPEZ,<br><br>Defendant. | Case No: 2:26-cv-12856<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs RR Entertainment Music Corp. and Ranphys Dario Ortiz de Leon ("Plaintiffs"), by and through their undersigned attorney, hereby complain of Defendant, Robert Dario Ortiz Lopez ("Defendant"), as follows:

**THE PARTIES**

1. Plaintiff RR Entertainment Music Corp. is a New Jersey corporation with its principal place of business at 27 Arlington Blvd., 2nd Floor, North Arlington, New Jersey 07031.

2. Plaintiff Ranphys Dario Ortiz de Leon is an individual residing at 5 Wedgewood Dr., Woodland Park, New Jersey 07424.

3. Defendant Robert Dario Ortiz Lopez is an individual residing at 1001 Webb Court, Kissimmee, Florida 34744, who purports to act as the personal representative of the estate of Dario Evangelista Ortiz De La Hoz.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

5. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

6. This Court also has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties, and the amount in controversy, including the value of the rights at issue, is greater than $75,000.

7. This Court has personal jurisdiction over Defendant because Defendant purposefully directed intentional conduct at New Jersey and at Plaintiffs Ranphys Dario Ortiz de Leon and RR Entertainment Music Corp., both of whom are based in New Jersey. The following facts, which are provided by way of example and not limitation, establish personal jurisdiction over Defendant:

a. Defendant knew that Plaintiffs' ownership, administration, distribution, and commercial exploitation of the Dhario Primero catalog were centered in New Jersey. The Artist Contract governing those rights was drafted and executed in New Jersey, requires application of New Jersey law, and provides that litigation concerning the agreement must occur in New Jersey.

b. Defendant also knew that Ranphys Ortiz had administered the rights conveyed by the Artist Contract from New Jersey for more than fifteen years and that

RR Entertainment Music Corp. was formed in New Jersey to administer those rights.

c. After acquiring that knowledge, Defendant intentionally submitted infringement reports, takedown notices, and ownership claims concerning the Dhario Primero catalog to digital platforms through which the New Jersey Plaintiffs distributed and commercially exploited the catalog.

d. Defendant expressly aimed that conduct at Plaintiffs' New Jersey-based business operations by challenging Plaintiffs' ownership of rights arising from the New Jersey Artist Contract and seeking removal or restriction of content distributed and administered by Plaintiffs from New Jersey.

e. Defendant's infringement reports represented to third-party platforms that Plaintiffs were unlawfully exploiting intellectual property that Defendant knew Plaintiffs claimed under the Artist Contract. Defendant submitted those reports with the intent to disrupt Plaintiffs' administration, distribution, and commercial exploitation of the catalog and to deprive Plaintiffs of the resulting business opportunities. The intended and foreseeable consequences of Defendant's conduct occurred in New Jersey, where Ranphys Ortiz and RR Entertainment Music Corp. administered the disputed rights and conducted the affected business operations.

f. Further, Defendant previously commenced litigation in this Court against Ranphys Ortiz, RR Entertainment Music Corp., and others concerning ownership and exploitation of the same catalog and intellectual-property rights at issue here.

g. Defendant's contacts with New Jersey were therefore not random, fortuitous, or based solely on Plaintiffs' residence. New Jersey was a focal point of both Defendant's intentional conduct and the resulting harm. Defendant targeted rights created and governed by a contract executed in New Jersey, targeted business activities conducted by New Jersey Plaintiffs, and sought to interfere with the administration and commercial exploitation of those rights from New Jersey.

h. Plaintiffs' intentional-tort and statutory misrepresentation claims arise directly from Defendant's New Jersey-directed conduct, including his allegedly false assertions of ownership, infringement reports, and takedown notices. Defendant could reasonably anticipate being required to answer in New Jersey for the consequences of conduct deliberately directed at New Jersey Plaintiffs, their New Jersey-based operations, and rights arising from the New Jersey Artist Contract.

i. Exercising specific personal jurisdiction over Defendant is consistent with due process because Defendant deliberately created contacts with New Jersey concerning the same parties, rights, contract, catalog, and alleged interference that form the basis of this action.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

## FACTS

<u>The Artist Contract</u>

9. On February 25, 2008, Dario Evangelista Ortiz De La Hoz, a professional recording artist known as Dhario Primero ("Primero"), executed an Artist Contract with his son Plaintiff Ranphys Dario Ortiz de Leon ("Ranphys Ortiz").

10. Primero was a popular Dominican singer and songwriter who recorded several studio albums beginning in the late 1970s, with the height of his career occurring in the 1980s and 1990s.

11. By 2008, Primero was experiencing financial difficulties and was attempting to relocate to the United States. In exchange for cash, Primero agreed that Ranphys Ortiz would take over the rights to his music, likeness, and brand. This agreement was memorialized in the Artist Contract.

12. Primero and Ranphys Ortiz drafted and executed the Artist Contract, in Spanish, at Ranphys Ortiz's home in Passaic, New Jersey. A copy of the Artist Contract, with a certified translation, is attached as Exhibit A.

13. The Artist Contract "fully, exclusively, irrevocably, and perpetually" assigned to Ranphys Ortiz the rights to Primero's music, including original masters, along with the full array of visual, contractual, and trademark related rights associated with Primero's music career.

14. At the time he entered into the Artist Contract, Primero's portfolio was not generating significant income, which was one of the reasons Primero needed cash.

15. Ranphys Ortiz paid Primero $20,000 under the Artist Contract and agreed that, once Ranphys Ortiz had recouped the $20,000 and any additional investment on his part, they would share net profits, with 65% of the profits going to Ranphys Ortiz and 35% to Primero.

16. Primero acknowledged in the Artist Contract that, in the absence of a new agreement, "all products and revenue derived from [Primero's] artistic career are the exclusive property of [Ranphys Ortiz]."

17. Pursuant to the Artist Contract, Primero transferred to Ranphys Ortiz all artistic rights, commercial rights, publicity rights, management rights, and rights to administer, promote, distribute, and exploit the Dhario Primero catalog.

18. The Artist Contract specifically granted Plaintiffs all rights to Primero's original masters in physical and digital format from the beginning of his artistic career to the present date.

19. Primero subsequently delivered the masters to Ranphys Ortiz, consistent with Primero's obligations under the Artist Contract.

20. The Artist Contract also granted Ranphys Ortiz all rights to photographs, videos, cover art, and visual materials produced from the 1970s to the present date, as well as any materials created in the future, and the right to maintain, control, and exploit Primero's internet domains and social media accounts.

21. The Artist Contract further specifically directed that, in the event of Primero's death, Ranphys Ortiz was to pay Primero's portion of any profits to Primero's son Dhario Ortiz Jr.

22. The Artist Contract, by its terms, is governed by the laws of the State of New Jersey.

23. From 2008 through approximately 2023, when Primero's health substantially worsened, Primero repeatedly ratified the Artist Contract through continuous conduct, including voluntarily shipping masters, archives, and original documents to Ranphys Ortiz at 26 Stewart Street, Passaic Park, New Jersey, which was Ranphys Ortiz's marital residence at the time; authorizing promotional and commercial materials; collaborating on artistic and commercial projects; and consistently recognizing Ranphys Ortiz as the administrator of his artistic career.

24. At Ranphys Ortiz's recommendation, Primero affiliated with BMI in 2007, which affiliation was reaffirmed on May 12, 2008.

25. Ranphys Ortiz administered Primero's BMI royalty account and reported royalty payments to the IRS annually. Royalties were nominal.

26. In July 2024, Ranphys Ortiz, together with his brother, Raphael Dario Ortiz de Leon, formed Plaintiff RR Entertainment Music Corp. to administer the rights transferred under the Artist Contract.

Primero's Illnesses and Passing

27. Primero's health began to fail in approximately 2013.

28. He suffered two heart attacks between 2013 and 2015 while living in New Jersey with Ranphys Ortiz, who cared for him after each incident.

29. In approximately 2016 or 2017, Primero permanently moved to Florida, where he suffered another heart attack and a stroke.

30. Ranphys Ortiz's half siblings, including Defendant Robert Dario Ortiz Lopez, live in Florida and had close access to Primero after his move.

31. Prior to and after his move, Primero repeatedly acknowledged Ranphys Ortiz's ownership and administration of the rights and property conveyed under the Artist Contract.

32. In approximately 2024, Primero was diagnosed with cancer.

33. Thereafter, Primero's cancer and cardiac condition substantially worsened, limiting his ability to continue participating with Ranphys Ortiz in artistic and commercial activities as he had previously done.

34. Primero passed away on May 14, 2025, from aggressive metastatic melanoma, acute blood loss anemia, and sepsis.

Robert Dario Ortiz Lopez

35. Defendant Robert Dario Ortiz Lopez ("Robert Ortiz") is the younger half-sibling of Ranphys Ortiz and Raphael Ortiz.

36. Robert Ortiz is an individual against whom Ranphys Ortiz has previously obtained a restraining order for creating a fake social media profile under which he pretended to be Ranphys Ortiz and posted defamatory content.

37. In approximately 2018, Robert Ortiz and Primero were involved in a failed business transaction concerning a truck. Primero alleged that Robert had defrauded him in connection with that transaction. The dispute led to an estrangement lasting several years, during which Primero and Robert did not speak. Primero sent multiple voice messages to family members stating that Robert repeatedly threatened him to discourage him from taking action against Robert concerning the transaction.

38. Robert Ortiz nevertheless claims to be the personal representative of Primero's estate and claims the estate owns the copyrights and trademark at issue in this action. The former claim is dubious, at best, and the latter claim is plainly false.

39. Primero did not own the copyrights or trademark because those rights were lawfully transferred to Plaintiffs pursuant to the Artist Contract.

40. On or about August 16, 2024, Primero and/or Defendant applied to the United States Patent and Trademark Office to register the word mark "Dhario Primero," which was granted on August 19, 2025, with registration number 7,897,681. On information and belief, Robert Ortiz was the actual filer of the application that matured into the trademark registration.

41. On April 17, 2026, the "Dhario Primero" mark was purportedly assigned to Primero's estate.

42. To the extent Primero participated in the trademark registration process, he had no right to seek such registration, a fact of which Robert Ortiz was aware at the time the trademark application was filed.

43. Under the Artist Contract, Primero assigned the exclusive right to register the "Dhario Primero" trademark to Ranphys Ortiz.

44. On information and belief, Robert Ortiz fraudulently obtained registration of the "Dhario Primero" trademark.

45. On information and belief, just months before Primero's death, Robert Ortiz filed or caused to be filed copyright registrations in Primero's name claiming ownership of sound recordings that had previously been lawfully transferred to Ranphys Ortiz pursuant to the Artist Contract.

46. On information and belief, Robert Ortiz obtained his appointment as the representative of Primero's estate through fraud or exploitation of Primero's terminal illness.

47. The alleged authority under which Robert Ortiz has purported to act is a last will and testament allegedly executed by Primero just five months before his death.

48. The signature on the will does not appear to be Primero's signature but, instead, appears to be a forgery.

Defendant's Retaliatory Litigation and Interference With Ranphys Ortiz's Rights Under the Artist Contract

49. Defendant has filed multiple claims against Plaintiffs before the Copyright Claims Board, with respect to all of which Plaintiffs have opted out.

50. Defendant also filed a prior federal action in this Court, which was dismissed for lack of subject matter jurisdiction.

51. Defendant has sought to interfere with Plaintiffs' contractual rights and business relationships by filing takedown notices and false copyright claims with various digital platforms, including YouTube, TikTok, Instagram, Facebook, and TuneCore.

52. Defendant has made false representations to online platforms regarding ownership of the property and rights granted to Ranphys Ortiz under the Artist Contract, causing disruption to Plaintiffs' business operations and revenue streams.

53. Defendant's actions have caused Plaintiffs to incur substantial legal fees, business losses, and reputational harm.

54. For example, as a result of Defendant's conduct, TuneCore terminated its distribution agreement with Plaintiffs, and Empire Latino, an independent record label, discontinued its then-ongoing contract negotiations with Plaintiffs.

55. Defendant's false infringement reports also resulted in the removal of the official Dhario Primero YouTube channel. The channel contained more than fifteen years of accumulated visual, archival, promotional, and editorial work that, on information and belief, is now lost.

56. The YouTube channel also contained rare and irreplaceable footage of Dhario Primero from the 1980s and 1990s. Plaintiffs understand that much of the historical footage is not recoverable.

57. The removal of the YouTube channel caused damage beyond the loss of immediate revenue. On information and belief, it destroyed an important digital archive of Primero's career and eliminated years of accumulated audience development, views, subscribers, promotional value, and historical content.

58. Defendant's false reports have also caused other platforms, including Instagram, TikTok, YouTube, X, and Facebook, to maintain restrictions or blocks on accounts, content, or uses associated with the Dhario Primero name.

59. As a result of Defendant's false reports, Plaintiffs believe that the historical, visual, and editorial work published on Facebook is also lost and no longer recoverable.

60. The Facebook materials believed to be lost included irreplaceable historical content, such as Primero's final appearance at St. Anthony of Padua Church in Passaic, New Jersey.

## COUNT I

**TORTIOUS INTERFERENCE WITH CONTRACT**
(Ranphys Ortiz and RR Entertainment Music Corp.)

61. Plaintiffs repeat, reallege, and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

62. The February 25, 2008 Artist Contract is a valid and enforceable contract between Primero and Ranphys Ortiz.

63. At all relevant times, Defendant had knowledge of the February 25, 2008 Artist Contract.

64. Defendant intentionally and improperly interfered with Ranphys Ortiz's rights under the Artist Contract by obtaining trademark and copyright registrations in contravention of the rights assigned under that contract, using fraudulent means or exercising undue influence over the ailing Primero, whom Defendant knew was not in a position to appreciate or otherwise understand the ramifications of his actions.

65. Defendant has further unlawfully interfered with Plaintiffs' contractual relationships by filing false copyright claims, submitting fraudulent takedown notices to digital

platforms, and making false representations regarding ownership of the works that are the subject of the Artist Contract ("the Works").

66. Defendant's interference was without justification.

67. Defendant's actions have caused Plaintiffs to suffer actual damages, including loss of revenue, business disruption, and harm to business relationships with digital platforms and distributors.

**COUNT II**

**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
(Ranphys Ortiz and RR Entertainment Music Corp.)

68. Plaintiffs repeat, reallege, and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

69. Plaintiffs have reasonable expectations of economic advantage from the continued exploitation, distribution, and commercial use of the Works and associated intellectual property rights granted under the Artist Contract, including with respect to prospective economic relationships with digital platforms, distributors, and consumers.

70. Defendant had knowledge of Plaintiffs' prospective economic relationships with digital platforms, distributors, and consumers.

71. Defendant intentionally interfered with those prospective economic relationships by filing false copyright claims and making false representations of ownership to third parties.

72. Defendant's interference was committed with malice and was designed to deprive Plaintiffs of their lawful business opportunities.

73. Defendant's actions have caused Plaintiffs to suffer actual damages, including lost profits, lost business opportunities, and reputational harm.

## COUNT III

**DEFAMATION – SPOTIFY AND TUNECORE**
(Ranphys Ortiz and RR Entertainment Music Corp.)

74. Plaintiffs repeat, reallege, and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

75. TuneCore is a third-party digital music distributor and aggregator for Spotify. Because Spotify does not allow independent artists to upload music directly to its platform, artists must use a distributor like TuneCore to make their music available on Spotify.

76. Ranphys Ortiz and RR Entertainment Music Corp. maintained an account with TuneCore through which they made Dhario Primero's music available on Spotify.

77. On or about February 23, 2026, Robert Ortiz submitted a notice of copyright infringement to Spotify, which Spotify forwarded to TuneCore, alleging that the album *Republica Dominicana Por Siempre, Vol. 1 (Remastered 2026)* by Dhario Primero infringed upon the copyrights at issue.

78. Robert Ortiz had submitted at least one prior similar copyright infringement report to Spotify.

79. Each of the copyright infringement reports Robert Ortiz submitted to Spotify was willfully and maliciously false.

80. Robert Ortiz knew at the time he submitted these infringement reports that the rights to the works that were the subject of the reports were transferred to and owned by Ranphys Ortiz pursuant to the Artist Contract.

81. Defendant therefore published objectively false statements to Spotify that Plaintiffs were infringing the copyrights at issue.

82. Defendant's statements were false and were made with knowledge of their falsity or with reckless disregard for the truth.

83. Defendant's false statements were published with malice and with the intent to disparage Plaintiffs and to cause Plaintiffs harm.

84. As a direct and proximate result of Defendant's false infringement reports, TuneCore terminated its services to Plaintiffs, ceasing all music publication services as to Plaintiffs' entire portfolio.

85. Defendant's false statements have caused Plaintiffs to suffer damages, including loss of revenue, business disruption, and harm to Plaintiffs' property interests.

## COUNT IV

### DEFAMATION – YOUTUBE

(Ranphys Ortiz and RR Entertainment Music Corp.)

86. Plaintiffs repeat, reallege, and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

87. YouTube is a global online video-sharing platform and social media network that allows registered users to upload, view, rate, share, comment on, and monetize video content.

88. Ranphys Ortiz and RR Entertainment Music Corp. maintained a YouTube account (under RR Entertainment Music Corp.'s name) through which they provided access to videos of Dhario Primero's performances.

89. On or about September 15, 2025, Defendant submitted a notice of copyright infringement to YouTube alleging that the video content posted by Plaintiffs Ranphys Ortiz and RR Entertainment Music Corp. infringed upon the copyrights at issue.

90. The notice was among multiple such reports Defendant submitted to YouTube.

91. On September 15, 2025, Plaintiff RR Entertainment Music Corp. received an email from YouTube notifying it that its YouTube account had been terminated "due to repeated claims of copyright infringement."

92. YouTube subsequently restored the content in response to information provided by Ranphys Ortiz.

93. On February 4, 2026, Defendant submitted yet another copyright infringement report to YouTube. YouTube ultimately terminated RR Entertainment Music Corp.'s account as a result of the repeated infringement reports from Defendant.

94. Each of the copyright infringement reports Defendant submitted to YouTube was willfully and maliciously false.

95. Defendant knew at the time these infringement reports were submitted that the rights to the works that were the subject of the reports were transferred to and owned by Ranphys Ortiz pursuant to the Artist Contract.

96. Defendant therefore published objectively false statements to YouTube that Plaintiffs were infringing the copyrights at issue.

97. Defendant's statements were false and were made with knowledge of their falsity or with reckless disregard for the truth.

98. Defendant's false statements were published with malice and with the intent to disparage Plaintiffs and to cause Plaintiffs harm.

99. As a direct and proximate result of Defendant's false infringement reports, YouTube terminated the RR Entertainment Music Corp. YouTube account.

100. Defendant's false statements have caused Plaintiffs to suffer damages, including loss of revenue, business disruption, and harm to Plaintiffs' property interests.

## COUNT V

### MISREPRESENTATION PURSUANT TO 17 U.S.C. § 512(f)
(Ranphys Ortiz and RR Entertainment Music Corp.)

101. Plaintiffs repeat, reallege, and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

102. Defendant has known of the Artist Contract, and of the legitimacy of all transfers of rights to Ranphys Ortiz thereunder, since 2008. Around that time, Robert moved to the United States from the Dominican Republic because of financial difficulties and, having no place to live, resided with Raphael Ortiz at 38 Park Avenue, Passaic Park, New Jersey 07055, for more than five years. During that period, Robert and Raphael frequently discussed the Artist Contract.

103. On or about February 23, 2026, Robert Ortiz submitted a DMCA takedown notice to Spotify, which Spotify forwarded to TuneCore and which ultimately led to the termination of the Ranphys Ortiz and RR Entertainment Music Corp. TuneCore account.

104. On or about September 15, 2025, and February 4, 2026, Defendant submitted DMCA takedown notices to YouTube, resulting in YouTube's termination of RR Entertainment Music Corp.'s account.

105. Each of the aforementioned DMCA takedown notices, and all other such notices submitted by Defendant, was knowingly materially false.

106. Each of the aforementioned service providers relied on Defendant's false DMCA takedown notices to remove or disable access to the material that was the subject of the false infringement allegations.

107. Pursuant to 17 U.S.C. § 512(f), Defendant is liable for all damages, including costs and attorneys' fees, incurred by Plaintiffs as a result of the false allegations of infringement

contained in Defendant's DMCA takedown notices.

## COUNT VI

### SLANDER OF TITLE
(Ranphys Ortiz)

108. Plaintiffs repeat, reallege, and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

109. Ranphys Ortiz holds valid legal title to the Works and associated intellectual property rights granted pursuant to the Artist Contract.

110. Defendant published false statements to third parties, including digital platforms, the United States Copyright Office, and the United States Patent and Trademark Office, claiming ownership of the Works and associated intellectual property rights.

111. Defendant's statements were false and were made with knowledge of their falsity or with reckless disregard for the truth.

112. Defendant's false statements were published with malice and with the intent to disparage Plaintiffs' title to and ownership of the assigned rights.

113. Defendant's false statements have caused special damages to Ranphys Ortiz, including loss of revenue, business disruption, and harm to his property interests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and granting the following relief:

**A.** Awarding compensatory damages to Plaintiffs in an amount to be determined at trial.

**B.** Awarding punitive damages to Plaintiffs.

**C.** Permanently enjoining Defendant from claiming ownership of any of the rights and property conveyed under the Artist Contract.

**D.** Permanently enjoining Defendant from filing false copyright claims or takedown notices with respect to the Works.

**E.** Permanently enjoining Defendant from interfering with Plaintiffs' business relationships and economic opportunities with respect to the rights conveyed under the Artist Contract.

**F.** Awarding Plaintiffs their costs and reasonable attorneys' fees.

**G.** Awarding prejudgment and post-judgment interest.

**H.** Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues triable by jury.

Dated: September 30, 2026

Respectfully submitted,

**JASON B. LATTIMORE, ESQ. LLC**

By: s/ Jason B. Lattimore

Jason B. Lattimore
55 Madison Avenue, Suite 400
Morristown, NJ 07960
(201) 569-0086
Jason@LattimoreLaw.com
*Counsel for Plaintiffs*

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

Pursuant to Local Civil Rule 11.2, I hereby certify under penalty of perjury that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding, except that there is a related matter pending before this Court under docket number 2:26-cv-05658-WJM-AME.

Dated: September 30, 2026

s/ Jason B. Lattimore
Jason B. Lattimore